NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**WOODWAY USA, INC.,**
*Appellant*

**v.**

**LIFECORE FITNESS, LLC, DBA ASSAULT FITNESS,**
*Appellee*

_____

2025-1323

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00843.

_____

Decided:  July 17, 2026

_____

SARAH E. RIEGER, Foley & Lardner LLP, Milwaukee, WI, argued for appellant.  Also represented by KADIE M. JELENCHICK; JACK THOMAS CARROLL, Madison, WI.

ANDREW B. TURNER, Brooks Kushman PC, Royal Oak, MI, argued for appellee.  Also represented by JOHN M. HALAN, KYLE G. KONZ, JOHN S. LEROY.

_____

Before LOURIE, HUGHES, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Woodway USA, Inc. ("Woodway") appeals from a final *inter partes* review decision of the United States Patent Trial and Appeal Board ("the Board"), which held claims 30–34, 37–39, 41, 45–49, 57, and 59 of U.S. Patent 10,561,884 ("the '884 patent") unpatentable as obvious. *Woodway USA, Inc. v. LifeCore Fitness, LLC*, IPR2023-00843 (P.T.A.B. Oct. 22, 2024), J.A. 1–59 ("*Decision*"). For the following reasons, we *affirm*.

## BACKGROUND

Woodway's '884 patent is generally directed to manually operated treadmills and mechanisms for controlling the motion of the treadmill's running belt. *See* '884 patent, Abstract. The '884 patent depicts manual treadmill 10 in Figure 1, which is reproduced below:



FIG. 1

Figure 1 shows that manual treadmill 10 comprises running belt 16, which further comprises a non-planar, curved running surface 70. '884 patent, col. 6 ll. 58–66. As the user runs, running belt 16 generally moves rearward or clockwise. *Id.* at col. 6 l. 66–col. 7 l. 1; col 29 ll. 5–6. Forward rotation of running belt 16 is undesirable because it could cause users to lose their footing, resulting in injury. *Id.* at col. 27 ll. 4–10. Manual treadmill 10, thus, may include safety devices to prevent forward rotation. *Id.* at col. 27 ll. 11–13.

Representative, independent claim 30 recites in part "[a] manually powered treadmill, comprising . . . a running belt . . . wherein the running belt comprises a curved running surface." *Id.* at col. 35 ll. 51–59. We refer to this as the "curved running surface" limitation. The claimed "manually powered treadmill" further comprises "a safety device coupled to the frame and the running belt." *Id.* at col. 35 l. 60. We refer to this as the "safety device" limitation.

LifeCore Fitness, LLC ("LifeCore") filed a petition for *inter partes* review of claims 30–34, 37–54, 57, and 59 of the '884 patent. *See Decision*, J.A. 1. Relevant on appeal, LifeCore argued that the claims containing the curved running surface limitation (*i.e.*, all claims on appeal) would have been obvious over U.S. Patent 3,637,206 ("Chickering") in combination with U.S. Patent 5,538,489 ("Magid") and certain disclosures from the reference book *Mechanisms & Mechanical Devices Sourcebook* ("Sclater") at the time of filing the '884 patent application. *Id.* at 29. Specifically, LifeCore argued that Chickering's single-belt embodiment, depicted in Figure 3, satisfied the "curved running surface" limitation because the disclosed belt of that embodiment follows the contour of rollers arranged in upward- and downward-sloping planes, producing a curved central portion where the planes meet. *See id.* at 33–34 (citing Chickering, col. 2 l. 73–col. 3 l. 10). Woodway re-

sponded that the claimed curved running surface is a surface with which a runner's feet are intended to make contact when using a treadmill and, in Chickering, a runner's feet are not intended to contact the belt at the area where the forward rollers meet the rearward rollers. *See id.* at 36.

The Board agreed with LifeCore, finding that Chickering's single-belt embodiment disclosed a curved running surface, as recited by claim 30, while rejecting Woodway's expert testimony that limited the claimed "curved running surface" to be a surface that a runner's feet would make contact with during normal use. *See id.* at 36–38. The Board also rejected Woodway's motivation to combine and secondary consideration arguments. *See id.* at 41–56. The Board ultimately found claims 30–34, 37–39, 41, 45–49, 57, and 59 unpatentable as obvious over Chickering in combination with Magid and Sclater. *See id.* at 46–47, 61–62.

Woodway timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Woodway argues that the Board erred in its obviousness determination because it applied an incorrect claim construction, and that under its view of the proper construction the Board's findings are not supported by substantial evidence. *See* Woodway Op. Br. 25–35. We disagree.

"We review the Board's claim construction *de novo* and any underlying factual findings for substantial evidence." *Restem, LLC v. Jadi Cell, LLC*, 130 F.4th 941, 944 (Fed. Cir. 2025) (citation omitted). "We review the Board's obviousness determinations *de novo* and its factual findings underlying those determinations for substantial evidence." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 160 F.4th 1360, 1366 (Fed. Cir. 2025) (citation omitted). "What a prior art

reference discloses is a question of fact." *Id.* (citation omitted).

Woodway contends that the Board implicitly construed the term "running surface" incorrectly to include portions of the running belt on which users would not be expected to place their feet. *See* Woodway Op. Br. at 25–28. In Woodway's view, the claimed "curved running surface" is limited to a surface that a "runner's feet would typically make contact [with] when the user is running on the treadmill during normal use." *Id.* at 26 (quoting Dr. Kim Blair's declaration (J.A. 4898 ¶ 90)). Under that construction, it contends Chickering cannot disclose a "curved running surface" because the only portion of Chickering's running belt that is "arguably curved is not a portion with which a user's feet are expected or intended to make contact." *Id.* at 30.

We disagree. Woodway mischaracterizes the Board's obviousness analysis and fails to show how the Board's obviousness determination was not supported by substantial evidence.

We first address Woodway's claim construction argument. Neither party requested that the Board expressly construe the term "running surface," and the Board did not expressly construe this term. *See* J.A. 4760–4762; 6894–6897. Nor did the Board implicitly construe that term. It merely rejected Woodway's expert testimony regarding the plain and ordinary meaning of "running surface," while making a fact finding regarding the differences between Chickering's endless belt 28 in Figure 3 and the '884 patent's "curved running surface" limitation. *Compare Decision*, J.A. 36 (determining the scope of Chickering's disclosures), *with id.* at 36–37 (concluding that Chickering "discloses a curved running surface, as recited by claim 30" and rejecting Woodway's arguments); *see also Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966) (holding that determining the "differences between the prior art and the claims at issue" is a fact question under 35 U.S.C. §

103).  We therefore reject Woodway's attempt to recast a factual dispute as a claim construction issue to obtain *de novo* review.  *See, e.g.*, *Restem*, 130 F.4th at 945 ("We do not agree with Restem that the Board's analysis constituted an implicit construction of the 'placing' step beyond its stated construction.  Instead, the Board made factual findings that supported its anticipation analysis.").

But even so, to the extent the Board's analysis could be taken as an implicit claim construction, we conclude that the Board did not err in rejecting Woodway's narrow construction of the term "running surface" because that construction conflicts with the language in the specification. *See Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1346 n.4 (Fed. Cir. 2020) ("We note that when a construction such as this is inconsistent with the plain language of the claims and the written description, it is incorrect.").

Here, nothing in claim 30 limits the claimed "running surface" to surfaces on which users would be expected to place their feet.  And the specification is consistent with that plain reading of the claim.  As the Board correctly pointed out, the '884 patent consistently describes the claimed "running surface" as a continuous surface that may comprise multiple regions (*e.g.*, front, central, and rear regions) with varying geometric configurations (*e.g.*, curved and linear portions).  *See Decision*, J.A. 37–38 (citing '884 patent col. 3 ll. 16–22, col. 6 ll. 34–40, col. 9 ll. 4–6, col. 10 ll. 11–16, col. 10 ll. 39–62, Figs. 7a–7j).  Given the breadth of the plain claim language and the disclosures in the specification, the claimed "running surface" plainly encompasses the running belt's continuous surface, whether or not it includes portions typically contacted by a runner's feet.  *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way that excludes disclosed examples in the specification."); *see, e.g.*, *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1280–81

(Fed. Cir. 2017) (affirming the Board's finding of unpatentability because nothing in the claims or specification limited the claims as purported and relied on by the patentee).

Because Woodway makes no challenge to the Board's findings under the proper construction of the "curved running surface" limitation, we do not disturb the Board's obviousness determination regarding this limitation, which is contained in all of the challenged claims.

Woodway does, however, challenge the Board's obviousness determination on two other grounds. It argues first that the Board applied the incorrect standard regarding teaching away and, regardless, that there was no motivation to combine the prior art with respect to the safety device limitation. *See* Woodway Op. Br. 35–53. It also argues that secondary considerations, namely, evidence of commercial success, outweigh the Board's obviousness determination. *See id.* at 53–62. Neither of those arguments is persuasive, and they fail to show that the Board's obviousness determination was not supported by substantial evidence.

Regarding the motivation to combine argument, Woodway does not dispute that the combination of Chickering, Magid, and Sclater teaches the "safety device" limitations. It contends that a person of skill would have had no reason to combine those references because Magid teaches away. *See id.* at 35–45. But the Board's determination is supported by substantial evidence. It explained that a "person of skill] would have modified Chickering to include a safety device as taught by Magid [*i.e.*, Magid's unidirectional control means 6,6' – ratchet and pawl mechanism] in order to reduce the risk of a user falling" based on the express teachings of those references and LifeCore's expert's, Dr. Giachetti, testimony. *Decision*, J.A. 40. It further explained, relying on other expert testimony, that the evidence supported an obvious substitution of "Sclater's one-way sprag-type bearing for Magid's ratchet and pawl one-

way mechanism to obtain predictable results, *e.g.*, reduced noise and improved durability." *Id.* It then rejected Woodway's teaching away arguments because those arguments did not concern the modification proposed in the petition. *Id.* at 41–42. We therefore conclude that the evidence, including the prior art disclosures and accompanying expert testimony, provide substantial evidence for the Board's motivation to combine finding.

As for Woodway's secondary considerations argument, the Board weighed Woodway's evidence of secondary considerations and found that Woodway did "not sufficiently establish a nexus between the unique features of the claimed invention and the evidence of secondary considerations." *See id.* at 47–56. "A showing of nexus can be made in two ways: (1) via a presumption of nexus, or (2) via a showing that the evidence is a direct result of the unique characteristics of the claimed invention." *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1210 (Fed. Cir. 2023). Here, the Board relied on Woodway's failure to establish coextensiveness for purposes of a presumption of nexus and its failure to show that the alleged secondary considerations were attributable to the claimed *safety* features rather than unclaimed features of its relevant commercial treadmills. *See Decision*, J.A. 49–55. The Board specifically found Woodway's witness testimony purporting that "safety is a critical factor for commercial success" not credible because that same witness testified that Woodway's alleged commercial success could be due to other factors, such as Woodway's reputation. *See id.* at 53. Thus, the Board's lack of nexus finding was supported by substantial evidence.

We therefore *affirm* the Board's determination that claims 30–34, 37–39, 41, 45–49, 57, and 59 of the '884 patent are unpatentable as obvious.

CONCLUSION

We have considered Woodway's remaining arguments and find them unpersuasive.  For the foregoing reasons, we *affirm*.

**AFFIRMED**